IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **Mendy Petty,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cause No. 3:11-CV-069-JTK |
| | § | |
| **Michael J. Astrue, Commissioner,** | § | |
| **Social Security Administration,** | § | |
| | § | |
| Defendant. | § | |

### ORDER AFFIRMING THE COMMISSIONER'S DECISION

This case considers plaintiff-claimant Mendy Petty's appeal of defendant Commissioner Michael J. Astrue's denial of Petty's application for Supplemental Security Income (SSI).[1]  Petty asked the Court to reverse the Commissioner's decision and remand her case to the Social Security Administration (SSA) for the award of benefits.[2]  The undersigned has authority to resolve this appeal pursuant to the parties' consent to the jurisdiction of the magistrate judge.[3]  After considering the record, the arguments of the parties, and the applicable law, this Court affirms the Commissioner's decision.

**Scope of a SSA disability-benefits appeal**.  In considering the appeal of a decision

---

[1]Docket entry # 2 (Petty's complaint); SSA record at pp. 9-20 (ALJ's unfavorable decision).  In the alternative, Petty asked the Court to remand her case for further proceedings.  Docket entry # 12, p. 10.

[2]Docket entry # 2, p. 2.

[3]*See* 28 U.S.C. § 636(c); docket dentry # 5.

denying an application for disability benefits, the Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error.[4] Substantial evidence is more than a mere scintilla of evidence; it "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] The Court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision.[6]

**The disputed issues in this appeal**. The parties do not dispute that Petty exhausted her administrative remedies[7] or that the Commissioner's administrative law judge (ALJ) followed the required five-step process for determining whether a disability-benefits

---

[4]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[5]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (internal citation omitted).

[6]*Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

[7]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

claimant is disabled.[8] Instead, Petty complained about the following aspects of the ALJ's decision:

(1) the ALJ's finding that Petty has no severe mental impairment,

(2) the ALJ's assessment of her residual functional capacity (RFC),

(3) the ALJ's evaluation of her credibility, and

(4) the ALJ's determination that she can perform her past relevant work as an administrative assistant.

Based on these complaints, Petty contended substantial evidence does not support the Commissioner's conclusion that she is not disabled. Petty also argued that the Commissioner's decision does not comport with required legal standards.

**The Commissioner's decision**. In considering Petty's application for SSI, the ALJ determined that despite having severe impairments—a seizure disorder and headaches[9]—Petty can perform her past relevant work as an administrative assistant.[10] Having made that determination at step four of the disability-determination process, the ALJ concluded that Petty is not disabled under the Social Security Act.[11]

---

[8]*See* 20 C.F.R. § 416.920 (setting forth the five-step sequential evaluation process for determining whether a claimant is disabled and entitled to SSI).

[9]*See* SSA record at p. 16.

[10]SSA record at p. 20.

[11]*See* 20 C.F.R. § 416.920(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can

**Substantial evidence supports the Commissioner's conclusion**. The following evidence supports the Commissioner's conclusion that Petty is not disabled: (1) treating-physician Terry Hunt's treatment notes reflecting no seizures after Petty began anti-seizure medication;[12] (2) a physical RFC by Dr. Jerry Mann, opining on May 7, 2008 that the medical evidence supports medium work with hazard limitations;[13] (3) a mental diagnostic evaluation by Dr. Mary Ellen Ziolko, opining on May 21, 2008 that Petty appeared capable of coping with the typical cognitive demands of basic work-like tasks, but could have some difficulty sustaining persistence in completing tasks if under a lot of stress and feeling

---

still do your past relevant work, we will find that you are not disabled.").

[12]*See* SSA record at p. 263 (indicating first seizure occurred on Mar. 22, 2008 and prescribing anti-seizure medication); *id*. at p. 259 (follow-up visit on Apr. 7, 2008, no report of seizures); *id*. at p. 257 (follow-up visit on Apr. 15, 2008, Petty brought in disability paperwork for doctor's signature but reported no seizure activity); *id*. at p. 312 (office visit on May 22, 2008, normal exam with no report of seizure activity); *id*. at p. 317 (office visit on July 18, 2008, normal exam with no report of seizure activity); *id*. at p. 320 (office visit on Sept. 11, 2008 for medication refills, no report of seizure activity); *id*. at p. 328 (office visit on Nov. 17, 2008 for medication refills, no report of seizure activity); *id*. at p. 330 (office visit on Jan. 15, 2009 for medication refills, no report of seizure activity; *id*. at p. 332 (office visit on Apr. 16, 2009 for medication refills, no report of seizure activity; *id*. at p. 334 (office visit on July 20, 2009 for medication refills, no report of seizure activity); *id*. at p. 342 (office visit on Oct. 15, 2009 for medication refills, no report of seizure activity); *id*. at p. 344 (office visit on Jan. 5, 2010 for medication refills, no report of seizure activity); *id*. at p. 346 (office visit on Apr. 5, 2010 for medication refills, reported sinus pain but no seizures); *id*. at p. 392 (office visit on July 26, 2010 for medication refills, no report of seizure activity).

[13]SSA record at pp. 270-77.

particularly anxious;[14] (4) a mental RFC assessment by state consultant Dr. Jay Rankin, reporting on June 4, 2008 that Petty can perform work where interpersonal contact is incidental to work performed, and the complexity of tasks is learned and performed by rote, with few variables;[15] and (5) Petty's statement to treating-neurologist Demetrius S. Spanos on Sept. 11, 2008, reporting no further seizures or headaches.[16]  This evidence constitutes substantial evidence because it is more than a mere scintilla of evidence and because a reasonable mind would accept the evidence as adequate to support the ALJ's conclusion that Petty is not disabled.  Despite substantial evidence, Petty contended the ALJ made legal errors in reaching the unfavorable decision.

**The Commissioner's decision comports with applicable legal standards**.

<u>The ALJ's finding about Petty's mental impairment</u>.  Petty complained that the ALJ failed to find that her anxiety constitutes a severe impairment.[17]  She maintained the evidence shows her anxiety more than minimally affects her ability to perform work. Petty asked the Court to reverse and remand her case for a proper step-two analysis.

At step two, the ALJ must consider the medical severity of the clamant's

---

[14]SSA record at pp. 284-88.

[15]SSA record at pp. 293-96.

[16]SSA record at pp. 320-21.

[17]Docket entry # 12, pp. 10-12.

impairments to determine whether the claimant has a severe medically determinable physical or mental impairment.[18] In considering an alleged mental impairment, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment—specifying the symptoms, signs, and laboratory findings substantiating the presence of the impairment—and then rate the degree of functional limitation resulting from the impairment.[19] In rating the severity of a mental impairment, the ALJ must evaluate four functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."[20]

The ALJ in this case followed the required process and considered the required functional areas.[21] Because the ALJ followed the required process, the Court need only consider whether substantial evidence supports the ALJ's determination that Petty's anxiety is not severe.

> A[] [mental] impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or

---

[18] 20 C.F.R. § 416.920(a)(4)(ii).

[19] 20 C.F.R. § 416.920a(b).

[20] 20 C.F.R. § 416.920a(c)(3).

[21] *See* SSA record at p. 16 (finding that anxiety resulted in mild limitation in the areas of activities of daily living; social functioning; concentration, persistence and pace; and finding no episodes of decompensation).

mental ability to do basic work activities. If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. It is the claimant's burden to establish that [her] impairment or combination of impairments are severe.[22]

Substantial evidence shows Petty's anxiety is not a severe impairment. Petty first complained about anxiety on April 7, 2008 during an office visit with Dr. Hunt. Petty requested medication for anxiety, and Dr. Hunt prescribed Prozac for 30 days.[23] Dr. Hunt prescribed no further treatment for anxiety, other than the incidental effects of Clonazepam. Clonazepam is mainly prescribed for managing seizures,[24] but it has also been found to help control anxiety.[25] The only medication Petty included on her medication reports that might benefit anxiety is Clonazepam.[26]

When Petty met with examining psychologist Ziolko, she reported that she had

---

[22]*Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007) (citations omitted). *See Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) (explaining that to be severe, a mental impairment must be a slight abnormality that does not significantly limit any basic work activity).

[23]SSA record at pp. 259-260.

[24]*See* J.E. Schmidt, M.D., 1-C Attorneys' Dictionary of Medicine C-26012 (describing Clonazepam as a "medicinal substance used to prevent or allay convulsions"); Stedmans Medical Dictionary 82920 (27th ed. 2000) (defining Clonazepam as an anticonvulsant drug).

[25]*See* J.E. Schmidt, M.D., 4-P Attorneys' Dictionary of Medicine P-86581 (explaining that Clonazepam may be used to treat panic disorder); Physician's Desk Reference 2010 (stating that Clonazepam "is indicated for the treatment of panic disorder, with or without agoraphobia, as defined in DSM-IV.").

[26]*See* SSA record at pp. 188, 204, 205, 323 & 409.

experienced increased anxiety since having a seizure. Dr. Ziolko reported that Petty's thought process was logical, relevant and goal directed.[27] Dr. Ziolko also reported that Petty "appeared capable of coping with the typical cognitive demands of basic work-like tasks,"[28] and that Petty "might have some difficulty sustaining in completing tasks when she is under a lot of stress and feeling particularly anxious."[29] Dr. Ziolko opined that Petty "would probably be able to complete work-like tasks within an acceptable timeframe when she isn't under a lot of stress."[30]

Dr. Hunt's treatment notes and Dr. Ziolko's report constitute substantial evidence that anxiety is a slight abnormality that would not significantly limit Petty's mental ability to do basic work activities, and that anxiety would have no more than a minimal effect on Petty's ability to work. Although Dr. Rankin subsequently opined that anxiety has a somewhat more limiting effect than Dr. Ziolko reported,[31] the Court may not reverse "the

---

[27]SSA record at p. 285.

[28]SSA record at p. 288.

[29]SSA record at p. 288.

[30]SSA record at p. 288.

[31]*See* SSA record at p. 295. Dr. Rankin opined that Petty was moderately limited in the abilities to carry out detailed instructions; maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision without begin distracted by them; to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to

denial of benefits so long as the ALJ's decision falls within the available zone of choice."[32] The ALJ's determination falls within the available zone of choice, especially considering that the ALJ and Dr. Ziolko personally observed and talked with Petty. The ALJ did not err in assessing Petty's anxiety.

<u>The ALJ's RFC assessment</u>. The ALJ determined that Petty has the RFC to perform light work not involving operating a motor vehicle or working around heights or dangerous machinery.[33] Petty complained that the ALJ failed to consider the effects of her mental impairment in making this determination. She also complained that the ALJ discounted Dr. Hunt's opinion about whether she can work. Petty asked the Court to reverse and remand the Commissioner's decision for further consideration of the effects of seizures, headaches and anxiety on her RFC.[34]

"A claimant's RFC represents the most [s]he can do despite the combined effects of

---

changes in the work environment; and to set realistic goals and make plans independent of others. Dr. Rankin further opined that Petty has a mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. *See* SSA record at p. 307.

[32]*Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) ("An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had [the court] been the initial finder of fact.").

[33]SSA record at p. 17.

[34]Docket entry # 12, pp. 12-15.

9

all of [her] credible limitations and must be based on all credible evidence."[35] "In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments."[36]

In this case, the medical evidence indicates that Petty can perform at least light work, except for a statement by Dr. Hunt. Dr. Hunt provided his statement on a disability form Petty provided.[37] Describing the form question about work-related limitations imposed by headaches, Dr. Hunt responded: "unable to do physical activity; stays in bed a lot."[38] The ALJ gave the opinion little weight.

> Under the Commissioner's regulations, a treating physician's opinion is given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Accordingly, an ALJ should "give good reasons" for discounting a treating physician's opinion.[39]

An ALJ may discount or disregard a treating physician's opinion if the treating physician

---

[35]*McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

[36]*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[37]*See* SSA record at p. 255 (indicating Petty brought in disability papers).

[38]SSA record at p. 251.

[39]*Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002) (internal citations omitted).

renders inconsistent opinions that undermine the credibility of the discounted opinion.[40]

In this case, the opinion in the disability form contradicted Dr. Hunt's treatment notes. The inconsistency undermined the credibility of the opinion that Petty can do no physical activity. The ALJ observed that Dr. Hunt's treatment notes do not support the opinion that Petty cannot do physical activity. The ALJ explained that the form was "completed on the claimant's second visit to Dr. Hunt, less than a month after her first seizure. Dr. Hunt's subsequent treatment notes show that the claimant consistently reported no further syncope or seizure activity and that headaches were not a significant complaint."[41] The ALJ also observed that Petty told Dr. Spanos on October 21, 2008, that she had not had a seizure since her first seizure and she had no further headaches.[42] The record supports these observations. In addition, no medical-record entry restricts Petty from physical activity. Because the opinion provided on the disability form contradicted Dr. Hunt's treatment notes, as well as contradicted Petty's report to Dr. Spanos, the ALJ properly discounted the complained-about opinion.

To the extent Petty complained about the ALJ's consideration of anxiety in

---

[40]*See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

[41]SSA record at p. 20. Syncope means a "temporary loss of consciousness, usually due to a failure in the blood supply to the brain. … Also called fainting." J.E. Schmidt, M.D, 5-S Attorneys' Dictionary of Medicine S-112542.

[42]SSA record at p. 19.

determining her RFC, the ALJ gave "little weight to the opinions of the nonexamining state agency consultant[] that the claimant's anxiety is severe."[43] This statement referred to Dr. Rankin's opinions in the mental RFC assessment and the psychiatric review technique. Although the ALJ characterized the opinion as assessing Petty's anxiety as severe, the ALJ somewhat over-stated Dr. Rankin's opinion. Dr. Rankin opined that Petty had a mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace; but he concluded that Petty can perform unskilled work.[44] In giving little weight to Dr. Rankin's opinion, the ALJ explained: "The claimant required no further treatment other than Klonopin [generic name: Clonazepam] from her primary care physician, and did not seek treatment from a psychiatrist, psychologist, or other mental health professional."[45] The ALJ provided sound reasons for discounting Dr. Rankin's opinions. The ALJ did not err in assessing Petty's anxiety. Thus, the ALJ was not required to consider the effect of anxiety in determining Petty's RFC.

To the extent Petty complained that the ALJ failed to consider her headaches and seizures, the ALJ's decision belies the assertion. The ALJ restricted Petty from work

---

[43]SSA record at p. 20.

[44]SSA record at pp. 307-09.

[45]SSA record at p. 20.

12

involving the operation of motor vehicles and from working around heights or dangerous machinery. Those restrictions recognize that a person with a seizure disorder may experience a sudden onset of an epileptic convulsion or a brief period of unconsciousness.[46] Although a person with a seizure disorder may legally drive in Arkansas—if she is under the care of a doctor and has not had a seizure for one year—the sudden onset of a seizure could nevertheless place a person in danger if she is operating a motor vehicle or working at heights or working with dangerous machinery. The inclusion of the limitation shows that the ALJ considered the effect of Petty's seizure disorder in the RFC assessment.

As for headaches, the ALJ found Petty's statements about daily headaches incredible. That complaint is addressed below. The ALJ did not err in determining Petty's RFC.

<u>The ALJ's credibility assessment</u>. The ALJ determined that Petty's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Petty's statements about the intensity, persistence and limiting effects of her symptoms were not credible beyond the ALJ's RFC assessment.[47] Petty asserted that the

---

[46]*See* J.E. Schmidt, M.D., 5-S Attorneys' Dictionary of Medicine S-104945 ("The term seizure applies to all types of epileptic attacks or manifestations whether or not they involve muscle movements. Thus a seizure may refer to an epileptic convulsion or to a brief period of unconsciousness (occurring in petit mal). A convulsion is a motor (movement) phenomenon, like jerking of muscles. All convulsions are seizures, but not all seizures are convulsions.").

[47]SSA record at p. 19.

ALJ should have placed more weight on her testimony about the impact of pain on her ability to work.[48] This complaint challenged the ALJ's credibility assessment.

An ALJ has a statutory duty "to assess the credibility of the claimant and other witnesses."[49] In considering the credibility a claimant's subjective complaints, an ALJ must consider the *Polaski* considerations: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions.[50] "In assessing a claimant's credibility, an ALJ must consider all of the evidence related to the subjective complaints, the claimant's daily activities, observations of third parties, and the reports of treating and examining physicians."[51] The ALJ is not required to discuss methodically each *Polaski* consideration, so long as the ALJ acknowledged and examined those considerations before discounting the claimant's subjective complaints.[52]

The ALJ in this case explicitly cited the *Polaski* considerations, stated that those

---

[48]Docket entry # 12, pp. 16-18.

[49]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[50]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[51]*McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Polaski*).

[52]*See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

matters were considered, including "the claimant's prior work history, and the observations of non-medical third parties, as well as treating and examining physicians related to the [*Polaski* considerations]."[53] The ALJ summarized Petty's testimony and explained why treatment records do not support Petty's testimony that she continues to experience seizures and daily headaches. The record supports the assessment. For example, Petty testified on December 15, 2009 that her seizures and headaches had gotten worse in the last month and a half, and that she sought an appointment with Dr. Spanos,[54] but when Petty saw Dr. Spanos on January 5, 2010, she did not report an increase in headaches or seizures. Dr. Spanos observed no abnormalities and instructed Petty to return in three months.[55]

The ALJ also discussed statements by Petty's husband, mother-in-law, and father-in-law;[56] treatment notes by treating physicians, observation by examining and consulting physicians; Petty's statements about the duration, frequency and intensity of her symptoms; and the dosage, effectiveness and side effects of Petty's medication. The ALJ

---

[53]SSA record at p. 18.

[54]SSA record at p. 46.

[55]SSA record at 344 (writing "NAD" about Petty's general appearance and reporting "0" on pain scale; Petty reported no new complaints).

[56]SSA record at p. 20.

conducted a thorough credibility assessment.[57] The ALJ did not err in assessing Petty's credibility.

<u>The ability to do past relevant work</u>. The ALJ determined that Petty can perform her past relevant work as an administrative assistant.[58] Petty argued that the ALJ erred by relying on the vocational expert's response to a flawed hypothetical question. Petty contended the ALJ's hypothetical question did not include all of her physical and mental impairments.[59]

In determining whether the claimant can perform her past relevant work, the ALJ may consult a vocational expert and seek "expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in

---

[57]The record reflects additional reasons to question Petty's credibility. For example, in applying for SSI, Petty stated that she cannot work due to headaches and seizures, but Petty told Dr. Ziolko that she stopped working because the pizza place where she worked closed. Petty initially alleged disability beginning on April 5, 2007, due to seizures and headaches, but Petty did not have a seizure until March 22, 2008. Petty testified that her doctor told her she cannot work, but nothing in Dr. Hunt's treatment records restricts Petty from working, other than the opinion discussed about physical activity.

[58]SSA record at p. 20.

[59]Docket entry # 12, pp. 18-19.

the national economy."[60] "A hypothetical [question] is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."[61]

Petty did not specify the impairments the ALJ failed to include in the hypothetical question, but suggested that the ALJ failed to include anxiety, periodic seizures, and daily headaches. The ALJ, however, was not required to include anxiety because the ALJ determined that anxiety was not a severe impairment, and thus had no more than a minimal effect on Petty's ability to work. The ALJ was not required to include periodic seizures and daily headaches because the ALJ found Petty's statements about the intensity, persistence and limiting effects of her seizures and headaches less than credible, and because the medical evidence contradicted Petty's statements.

The ALJ asked the vocational expert whether a person with the RFC to perform a light work, but unable to operate a motor vehicle or work around heights and dangerous machinery, can perform the job of administrative assistant.[62] The vocational expert answered "yes." The vocational expert's testimonial response constitutes substantial evidence supporting the ALJ's step-four determination.

Implicit in the ALJ's determination was the finding that Petty's complaints about

---

[60]20 C.F.R. § 416.960(b)(2).

[61]*Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

[62]SSA record at p. 48.

anxiety, periodic seizures, and daily headaches were unsubstantiated. The ALJ explained why those complaints were not supported by Petty's medical record. The ALJ was not required to include impairments that were not supported by substantial evidence and that the ALJ did not accept as true. Because the hypothetical posed to the vocational expert sufficiently set forth Petty's impairments which the ALJ accepted as true, the ALJ did not err.

**Conclusion**. Having determined that substantial evidence supports the Commissioner's denial of Petty's application for SSI, and that the Commissioner made no legal error, the Court DENIES Petty's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

So ordered on this 19th day of June, 2012.

_____
United States Magistrate Judge